# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ANGELA MOORE,

    Plaintiff,

v.                                No. CIV 01-1079 WJ/JHG

THE CONNECTION,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court pursuant to Defendant's Motion for Summary Judgment [Docket No. 28], Plaintiff's Motion to Extend Plaintiff's Time Limit to File Plaintiff's Opposed Motion for Summary Judgment [Docket No. 67], and Plaintiff's Opposed Motion for Summary Judgment [Docket No. 72].

**BACKGROUND**

Plaintiff *pro se* filed this action alleging a violation of Title VII, 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 1981. Plaintiff is African American and was employed by Data Listing Services, LLC d/b/a The Connection. Plaintiff was employed with The Connection for four and a half months and was then terminated from her employment.

Plaintiff was hired on October 2, 2000. Between October 2 and December 28, 2000, Plaintiff admits she had eight absences from her job. Plaintiff received a performance evaluation on December 28, 2000 that generally stated that Plaintiff was doing a good job, but remarked that

Plaintiff needed to improve on her attendance. Plaintiff admits that between December 28, 2000 and February 21, 2001 she had six additional absences.

On February 14, 2001, Plaintiff was on the phone with a customer when another employee pulled the lever on Plaintiff's chair causing it to slide down. Plaintiff and the other employee began to laugh loudly and Plaintiff told the other employee, "I am going to kick your butt." Plaintiff was suspended from her job for three days for this incident. Plaintiff was informed that her job was in jeopardy.

Plaintiff believed her suspension was effective until February 20 and did not check her schedule to see if she was supposed to work February 19. The performance improvement form documenting her suspension showed that the dates of suspension were February 14 through February 18. Plaintiff was scheduled to work on February 19 and did not show up for work. Plaintiff showed up to work on February 20, but was unable to clock in because her time card was unavailable and she had to wait for her supervisor to give her access to the card. Plaintiff waited for twenty to thirty minutes and then left. Plaintiff took her daughter to the doctor. After returning from the doctor, Plaintiff spoke with her supervisor. The supervisor told Plaintiff she could go ahead and come into work. Plaintiff declined and stated she had to stay with her daughter who had been diagnosed with bronchitis.

Plaintiff went to work on February 21, 2001. At some point during the day, her son's school principal called and requested that Plaintiff come to the school. Plaintiff left work to pick up her son. Later that day she called her supervisor from home and was told that her employment was being terminated.

Plaintiff admits that she had a high rate of absenteeism. However, she contends that other employees had similarly high rates of absenteeism, all are Caucasian, and all continue to be employed by Defendant. Plaintiff alleges that she was terminated because of her race.

Defendant filed the instant motion for summary judgment stating that Plaintiff could not make a prima facie showing of discrimination under Title VII and Section 1981. Additionally, Defendant argues that Plaintiff cannot produce any evidence in support of her claims. Plaintiff initially filed a response to the motion titled "Opposed Motion for Summary Judgment" [Docket No. 34]. This response contained little in the way of admissible evidence to support Plaintiff's claims. At the time, however, there was a motion pending before this Court objecting to Magistrate Galvan's order compelling Defendant to respond to Plaintiff's discovery requests. This Court overruled Defendant's objections by Order filed August 6, 2002 [Docket No. 57]. By the same Order, this Court permitted Plaintiff an opportunity to file supplements to her response to the motion for summary judgment within fourteen days of receiving Defendant's responses to her discovery requests.

On September 9, 2002, Plaintiff filed her motion requesting an extension of time to file her supplements to her response [Docket No. 67]. Defendant's response to that motion [Docket No. 69] maintains that Defendant stipulated that Plaintiff's supplements were not due until fourteen days from September 6, 2002. Thus, Plaintiff's supplements were not due until September 20, 2002.

On September 17, 2002, Plaintiff filed "Plaintiff's Opposed Motion for Summary Judgment" [Docket No. 72]. In the conclusion section of this document, Plaintiff requests summary judgment in her favor and asks that the Court deny Defendant's motion for summary

judgment. Thus, this Court will liberally construe Docket No. 72 both as Plaintiff's supplement to her response to Defendant's motion for summary judgment and as a cross motion for summary judgment.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing an absence of a genuine issue of material fact falls upon the moving party. See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998). However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671. The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). All reasonable factual inferences must be drawn in favor of the nonmoving party. Seamons v Snow, 206 F.3d 1021, 1026 (10th Cir. 2000); Curtis v Oklahoma City Public Sch. Bd. of Ed., 147 F.3d 1200, 1214 (10th Cir. 1998). However, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. Bausman v Interstate Brands Corp., 252 F.3d 1111 (10th cir. 2001). In setting forth facts, the nonmoving party need not present evidence in a form admissible at trial, but the content or substance of the

evidence must be admissible. Adams v. American Guarantee and Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

**DISCUSSION**

I. PLAINTIFF'S MOTION FOR EXTENSION OF TIME

Plaintiff's supplement to her response to Defendant's motion for summary judgment was, as stipulated by Defendant, due fourteen days from September 6, 2002. Plaintiff filed her supplement on September 17, 2002, well within the time limit. Her motion for extension of time is therefore moot and will be denied as such.

II. EVIDENCE CONSIDERED BY THE COURT IN RULING ON THE MOTIONS

In order to address whether Plaintiff makes the necessary showing to defeat Defendant's motion, much less a sufficient showing to be entitled to summary judgment, the Court must first address issues that are raised by the evidence submitted by the parties. Defendant submitted a copy of Plaintiff's complaint filed with the New Mexico Human Rights Division, Plaintiff's answers to Defendant's First Set of Interrogatories, Plaintiff's Initial Disclosures, a transcript of Plaintiff's deposition testimony, a copy of Plaintiff's last performance evaluation as an employee of Defendant, and a copy of Defendant's attendance policy. The content and substance of all of these submissions is admissible and part of the evidence considered by the Court in ruling on the parties' motions.

In responding to Defendant's motion, Plaintiff has submitted a copy of her employee attendance record from November 9, 2000 through February 20, 2001. [Exhibit A to Docket No. 34 and Docket No. 72]. On this copy are several handwritten notations that appear to be Plaintiff's comments regarding the various entries on the attendance record. The substance of the

attendance record is admissible, but the handwritten notations are not. The handwritten notations will not be considered by the Court. Plaintiff submitted a letter from Crystal Sanders dated February 14, 2001. [Exhibit C to Docket No. 34 and Exhibit M to Docket No. 72]. This letter is hearsay and will not be considered by the Court. Plaintiff submitted a newspaper article regarding Defendant. Exhibit F to Docket No 34 and Exhibit P to Docket No. 72]. The newspaper article omits the date and name of the publication in which the article appeared. This exhibit will not be considered by the Court. Plaintiff submits a note that she appears to have written on March 19, 2001. [Exhibit Q to Docket No. 72]. This note is hearsay and will not be considered by the Court. Plaintiff submits an e-mail from Hipolitasia Gutierrez addressed "To Whom it May Concern." [Exhibit V to Docket No. 72], a note from Trishella Childress addressed "To Whom it May Concern" [Exhibit W to Docket No. 72] a note from Marci Lieberwirth [Exhibit X to Docket No. 72] and a note from Patricia Moore [Exhibit Y to Docket No. 72]. The contents of these exhibits are hearsay and will not be considered by the Court.

III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As noted above, Plaintiff prays for summary judgment in her Response to Defendant's Motion for Summary Judgment. Plaintiff's proffered evidence does not suggest that any reasonable jury would have to find for Plaintiff as a matter of law. Plaintiff has failed to show that there is a lack of any genuine issue of material fact and that she is entitled to summary judgment as a matter of law. Thus, she is not entitled to summary judgment and her motion will be denied.

IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant's motion for summary judgment asserts that Plaintiff cannot make a prima facie showing of discrimination under Title VII and Section 1981. Plaintiff's motion for summary

6

judgment asserts that she has proven her case as a matter of law. In order to succeed on a claim of discrimination under Title VII and Section 1981, Plaintiff must show intentional discrimination. Perry v. Woodward, 199 F.3d 1126 (10th Cir. 1999). A plaintiff may prove discriminatory intent either directly or indirectly. Jones v. Denver Post Corp., 203 F.3d 748 (10th Cir. 2000). When a Plaintiff is attempting to show discriminatory intent by an indirect showing, the McDonnell Douglas burden shifting framework guides the Court's analysis at the summary judgment stage. Kendrick v. Penske Transp. Serv., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000).

Under the McDonnell Douglas framework, a plaintiff bears the initial burden of establishing a prima facie case of racial discrimination. Id. Once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its employment decision. If a defendant meets this burden, the burden then shifts back to the plaintiff to show that the defendant's proffered reason for the employment decision is a pretext for discrimination.

In McDonnell Douglas v. Green, the Supreme Court enumerated the elements required in order for a plaintiff to establish a prima facie case in a failure to hire context. 411 U.S. 792, 802 (1973). In that case, the Court stated that the elements of a prima facie case are 1) that plaintiff belongs to a protected class; 2) that plaintiff applied and was qualified for a job for which the employer was seeking applicants; 3) despite being qualified, the plaintiff was rejected; and 4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons with plaintiff's qualifications. The Supreme Court did recognize that the articulation of the elements of a prima facie case would vary somewhat depending on the context of a particular case, and the Tenth Circuit has often discussed the need to view the elements of a prima

7

facie case in a flexible manner. See Perry, 199 F.3d 1126. However, the essential purpose of the prima facie case remains the same. Kendrick, 220 F.3d at 1227. The "prima facie case serves to eliminate the most common nondiscriminatory reasons . . ." for adverse employment action. Id. In disparate discharge cases such as Plaintiff's, the prima facie elements frequently articulated are that 1) plaintiff is a member of a protected class; 2) plaintiff was qualified for her job; 3) despite her qualifications, plaintiff was terminated; and 4) plaintiff's position was not eliminated after her discharge. Kendrick, 220 F.3d at 1229. The fourth element may also be met by a showing that plaintiff was treated less favorably than others not in the protected class. Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531 (10th Cir. 1998).

"The burden of establishing a prima facie case of disparate treatment is not onerous." Brinkley-OBU v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994). Defendant argues that Plaintiff cannot make a prima facie showing because, specifically, she cannot show under the second prong that she was qualified for her job. Defendant asserts that Plaintiff was not qualified for her job because of her frequent absences from work. Defendant misapprehends the meaning of the second prong of the prima facie case and the prima facie case in general. It is well established that an employer's asserted reasons for taking adverse employment action are not appropriately brought as a challenge to the sufficiency of plaintiff's prima facie case. Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1470 (10th Cir. 1992). In MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F.2d 1115 (19th Cir. 1991), the defendant attempted the same argument. In that case, the employer argued that the plaintiff's job performance had been unsatisfactory and thus the plaintiff could not make a prima facie showing that he was qualified for his job. The Tenth Circuit stated that using a defendant's stated reasons for the challenged employment action

8

in the prima facie case cut off a plaintiff's opportunity to show that the proffered reasons for the adverse action were pretextual. Id. Thus, it is an erroneous analysis to judge Plaintiff's qualifications based on the absenteeism that Defendant alleges is the reason Plaintiff was discharged.

The above begs the question, then, what is Plaintiff required to show to establish that she was qualified for her job? In Kenworthy, the Court stated that in a discriminatory discharge case, Plaintiff need only show that she continued to possess the objective qualifications she held when she was hired. Kenworthy, 979 F.2d at 1469. Thus, even when disputed by the employer, a plaintiff's own testimony that her work was satisfactory will suffice to satisfy the second prong of the prima facie case. Id. Additionally, the second prong may be inferred when there is evidence that a plaintiff held a position for a significant period of time. MacDonald, 941 F.2d at 1121.

As an example of the simplicity with which a Plaintiff may make out a prima facie showing under Title VII and Section 1981, I am able to determine, even on the limited evidence in this case, that Plaintiff does make out the first three elements of her prima facie case. Plaintiff's deposition testimony establishes that she is African American. Thus, she is a member of a protected class. Both Defendant and Plaintiff provided a copy of a performance evaluation showing that Plaintiff was found to be qualified for her job six weeks prior to her termination. This is sufficient to satisfy the second prong of Plaintiff's prima facie case. There is no dispute that Plaintiff's employment was terminated. This satisfies the third prong of Plaintiff's prima facie case. The only issue, then, is whether Plaintiff is able to establish the fourth prong of her prima facie case.

Plaintiff's proffered evidence suggests she is attempting to meet her burden on the fourth prong by showing that other similarly situated employees at The Connection were treated more favorably than she. Specifically, she alleges that other employees whose attendance at work was similar to hers were not fired. Plaintiff provides attendance records for herself and several other employees. Ms. Moore's attendance record shows 23 absences between November 9, 2000 and February 20, 2001.[1] Exhibit A. The attendance records of other employees show one with 20 absences, one with 14, one with 9, one with 15, and one with 4 absences.

Defendant does not dispute that these other employees were not terminated from their employment for their absenteeism. Defendant correctly points out that none of the other employees had as many absences as Plaintiff. However, the issue at this stage of the summary judgment analysis is whether Plaintiff has made a prima facie showing of discrimination. I find that Plaintiff has made a prima facie showing.

The burden is then on Defendant to articulate some legitimate nondiscriminatory reason for terminating Plaintiff's employment. Defendant states that it terminated Plaintiff's employment for her unacceptable absenteeism in combination with her suspension for inappropriate language and continued problems with absenteeism following her suspension. Defendant has therefore met its burden of articulating a legitimate nondiscriminatory reason for terminating Plaintiff's employment.

The burden has thus shifted to Plaintiff to show that Defendant's proffered reason for terminating Plaintiff's employment is a pretext for discrimination. If a plaintiff succeeds in

---

[1] Plaintiff disputes the accuracy of her record. She states that at least two of the recorded absences did not occur and one absence that did occur was not on the record. Thus, Plaintiff believes there were only 22 absences.

showing a prima facie case and presents evidence that a defendant's proffered reason for the employment decision was pretextual--i.e. unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial. Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). In order to meet this burden, Plaintiff's evidence must be such that a reasonable jury could conclude that the proffered nondiscriminatory reason for the employment action is pretextual, that is, unworthy of belief. Hardy v. S.F. Phosphates Ltd Co., 185 F.3d 1076, 1079-80 (10th Cir.1999); see also Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir.1999); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir.1999). A plaintiff need not always present additional evidence in order to show pretext; a plaintiff's prima facie case may itself cast sufficient doubt on a defendant's proffered nondiscriminatory reason to satisfy her burden of showing pretext. English v. Colorado Dep't of Corrections, 249 F.3d 1002, 1009 (10th Cir. 2001).

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). The evidence that a plaintiff can present in an attempt to establish pretext may take a variety of forms, and a plaintiff may not be forced to pursue any particular means of demonstrating pretext. Kendrick, 220 F.3d at 1230. A plaintiff typically makes a showing of pretext in one of three ways: 1) with evidence that the defendant's stated reason was false; 2) with evidence that the defendant acted contrary to a written policy prescribing the action taken by

defendant; or 3) with evidence that the defendant acted contrary to an unwritten policy or company practice. Id.

A plaintiff who wishes to show that a defendant acted contrary to an unwritten policy or practice often does so by showing that she was treated differently from other similarly situated employees who violated work rules of comparable seriousness. Id. Not every difference in treatment among employees will establish discriminatory intent, and Title VII does not make unexplained differences or even irrational employment decisions illegal. Id. at 1232. Differences in treatment that are explained by a nondiscriminatory motive will not sustain a claim of pretext. Id. When a plaintiff seeks to demonstrate that a defendant's proffered nondiscriminatory reason is pretextual, she is required to show that the tendered reason is not the genuine reason for the employment decision, but rather was a disingenuous or sham reason. English, 248 F.3d at 1010.

In Kendrick, an African American man was hired by defendant as a truck driver. 220 F.3d 1220. After being employed for two years, Mr. Kendrick was terminated after a confrontation with his supervisor Mr. Tirrell. Mr. Kendrick was driving through the gate at the employer's facility when Mr. Tirrell signaled him to stop. Tirrell told Kendrick that he was driving too fast. Kendrick then drove off and parked the truck. When Kendrick exited his truck, he was told to go to the front office. When Kendrick arrived at the main office building, Tirrell told him to go to the front office. Tirrell stood face-to-face with Kendrick, told Kendrick the front office wanted to see him immediately, then used language that invited Kendrick to initiate a physical confrontation with Tirrell. Kendrick walked away, Tirrell yelled after him that he was fired, and Kendrick then cursed at Tirrell.

12

Kendrick then returned to the front office with a union steward. Kendrick met with two center managers in addition to Tirrell. Tirrell told the managers that Kendrick had physically charged at him, pushed him, and verbally abused him. Kendrick refused to give his own side of the story. The managers suspended Kendrick without pay then later terminated his employment for gross insubordination. In attempting to show that defendant's proffered reason for terminating his employment was pretextual, Kendrick offered evidence that several other employees had cursed at their supervisors but had not been terminated.

The Tenth Circuit found that none of these other incidents showed that employees similarly situated to Kendrick who had violated work rules of comparable seriousness had been treated differently than Kendrick. Kendrick, 220 F.3d at 1232. The Court found these were not incidents of comparable seriousness to the incident involving Kendrick. Kendrick was fired because the managers believed he had both cursed at and physically assaulted Tirrell. Id.

Like the plaintiff in Kendrick, Plaintiff here attempts to show pretext by offering evidence that she was treated less favorably than similarly situated employees. However, Plaintiff offers no evidence that other employees violated work rules of comparable seriousness. While some of the other employees had comparably bad work attendance records, there is no evidence that any of these employees had also been suspended for using inappropriate language while on the phone with a customer or for any other reason. Nor is there evidence that any other employee received a warning that his or her job was in jeopardy and subsequently had problems with absenteeism. Thus, Plaintiff has failed to meet her burden of showing that Defendant's stated reason for discharging Plaintiff was a pretext for discrimination. Consequently, Defendant is entitled to summary judgment on Plaintiff's claims.

**CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion to Extend Plaintiff's Time Limit to File Plaintiff's Opposed Motion for Summary Judgment [Docket No. 67] is hereby DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiff's Opposed Motion for Summary Judgment [Docket No. 72] is hereby DENIED.

IT IS FINALLY ORDERED that Defendant's Motion for Summary Judgment with regard to Plaintiff's claim for Racial Discrimination in Count I of the Complaint [Docket No. 28] is hereby GRANTED.

_____
UNITED STATES DISTRICT JUDGE